184    WEBSTER *v.* VOGEL *et al.*    [Sept. T.,

Opinion of the Court.  Syllabus.

SIDNEY T. WEBSTER

*v.*

CHARLES J. VOGEL *et al.*

1. RELEASE OF DAMAGES—*not implied by new contract with another person.* The defendant, by a verbal contract, chartered a vessel to plaintiffs for the season, guaranteeing that her boiler was in good condition, and delivered possession.  On inspection the boiler was found to be in an unsound condition and needing extensive repairs.  Defendant's agent directed plaintiff to make the necessary repairs, telling·them it would be all right.  After the repairs were made, involving a considerable expense and damage for wages paid employés who were idle during the repairing, the plaintiffs applied for a written charter-party, and were informed by defendant that he was not the owner of the vessel.  While the repairs were being made defendant chartered the vessel for the season to a railroad company.  The owner refused to charter her to plaintiffs, unless they would accept the charter which defendant had made to the railroad company and perform defendant's part of that agreement.  The plaintiffs then took such charter, agreeing to perform defendant's contract with the railroad company, the owner agreeing to allow them one-half of the cost of the repairs:  *Held,* that the new contract with the owner did not cancel the defendant's verbal undertaking and release him from liability for damages, except to the extent of the cost of repairs agreed to be paid by the owner.

2. CONTRACT—*implied abrogation or release.*  It seems when a party has become liable by the violation or breach of a contract made by him in respect to the use of property of which he is not the owner, and the injured party then procures a similar contract from the rightful owner, and in it assumes some of the undertakings of the wrong-doer to still another party, that this will not, by implication, have the effect to dissolve the first contract and release the party making it from his liability for damages.

APPEAL from the Superior Court of Chicago; the Hon. WILLIAM A. PORTER, Judge, presiding.

Messrs. RAE & MITCHELL, for the appellant.

Messrs. MILLER, FROST & LEWIS, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action brought by Vogel & Crandall, the appellees, against Webster, the appellant, to recover damages growing out of a verbal charter-party between the parties.

On the trial the evidence on the part of the plaintiffs tended to show a contract with Webster for the charter of the propeller "Equator" for the season of 1869, made on the fifteenth day of May, 1869; that Webster guaranteed the vessel to be of a certain capacity, and that her boiler was in good condition, and thereupon delivered to them possession of the vessel; that they went forward to get her ready for sailing, making such slight repairs as the contract contemplated, and called upon the inspector for a certificate of seaworthiness, who, after an examination, reported the boiler in an unsound condition and as needing extensive repairs; that they then informed Webster's agent of this, who told them to go on and do what was necessary to put the boiler in good condition, and that it would be all right; that they then repaired the boiler at an expense of $2,523.18, aside from the wages paid their own men while the repairs were being made, $600.13 in addition, finishing such repairs about the 14th of June; that they then applied to Webster for a written charter-party, in accordance with the terms of their agreement with him, and were then, for the first time, told that Webster was not the owner of the propeller, but that she belonged to one E. A. Buck, of Buffalo, and that before they could have the use of her they must make a contract with him. That they also learned, that on the tenth day of June, while they were still engaged in repairing her boilers, Webster had, without con-

sulting them, chartered the propeller, for the season, to the Western Union Railroad Company, and that the agents of Buck refused to let them have any charter from him unless they would accept the charter which Webster had made to the Western Union Railroad Company and perform Webster's part of that contract; that they then took from E. A. Buck a written charter-party of the vessel for the season and executed a writing, which is termed a release by the appellant, whereby they agreed, in the stead of Webster, to perform the covenants and conditions in his charter-party to the railroad company.

There was a conflict between the testimony of defendants' and that of the plaintiff's witnesses, as to the terms of the contract between Webster and Vogel & Crandall, but the jury, to whom it was fairly submitted, on both sides, seem to have given credit to the latter rather than the former, and the court, in deciding the question for a new trial, found no reason for disturbing their verdict in this respect, nor do we, after an examination of the evidence.

The main point raised by the appellant as a ground for reversing the judgment of the court below, is, that the written charter-party with Buck of the 17th of June, together with the writing executed by the appellees, called a release, was, by the agreement of all the parties, substituted in the place of the verbal contract between Webster and the appellees of the 15th of May, and had the effect of dissolving that contract, and releasing Webster from the liability he was under to the plaintiffs, by reason of the breach of it.

In this written charter-party between Buck and the appellees nothing whatever is said about their previous agreement with Webster. Nor does it, in terms or by implication, release Webster from the payment of the damages appellees had sustained by reason of his breach of that agreement.

According to the plaintiffs' testimony they had sustained large damages by reason of the breach of Webster's agreement. Buck was the mortgagee of the vessel, not liable for them, and as Webster was not able to carry out his contract, the taking

of the written charter-party from Buck, who alone could give a valid one, although for the most part the same as the prior contract with Webster, and containing a stipulation that Buck should pay half the cost of repairing the boiler, should not be held impliedly to release their claim for damages as against Webster, further, at least, than to the extent of what Buck agreed to pay.

The writing executed by the appellees, at the same time, was no more than to take the place of Webster in his contract with the Western Union Railroad Company. It contains what purports to be a release of Webster by the railroad company from his contract with it, and was evidently designed to be executed by the railroad company, and had it been, would have been a release of Webster from his contract with that company. It does not import to release him from any liability to the appellees under their contract with him of May 15th. There is nothing in the evidence showing any express agreement on the part of appellees to release Webster from the contract of the 15th of May, or the damages they had sustained by reason of his violation of that contract.

There was evidence on the part of the defendant of what the plaintiffs did and said which would go to show that the written charter-party was the final arrangement and settlement of all questions arising up to the time of executing the papers; but here, too, there was contradictory testimony on the part of the plaintiffs, and we think it should rest as settled by the jury. Their finding is sustained by the evidence, and no sufficient reason appears for disturbing it.

The judgment of the court below must be affirmed.

*Judgment affirmed.*